IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODERICK D. NEWTON, | § | |
| *Petitioner,* | § | |
| | § | |
| V. | § | |
| | § | No.  3:03-CV-01770-K |
| NATHANIEL QUARTERMAN, Director, | § | ECF |
| Texas Department of Criminal Justice | § | (Death Penalty Case) |
| Correctional Institutions Division, | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Roderick D. Newton ("Petitioner" and "Newton") has filed an application for a writ of habeas corpus pursuant to 28 U.S.C.§ 2254.  For the reasons stated herein, the application is denied.

## I.  PROCEDURAL HISTORY

Petitioner was convicted of capital murder and sentenced to death. *See State v. Newton*, No. F99-36618-HI (2nd Judicial Dist. Ct., Dallas County, Texas, Mar. 1, 2000).  His conviction and sentence were affirmed on direct appeal. *See Newton v. State*, No. 73,778 (Tex. Crim. App. June 12, 2002)(unpublished).   Petitioner filed an application for state post-conviction relief during the pendency of his state appeal.  The application was denied in an unpublished order. *Ex parte Newton*, Writ No. 55,333-01 (Tex. Crim. App. Jan. 15, 2003).  Petitioner then filed this action in federal court. (Doc. #15.)

## II.  FACTUAL BACKGROUND.

On March 8, 1999, Newton and Julian Williams went to a car wash in Dallas, Texas, with the intent to find someone to rob. (32 Reporter's Record, "RR", at 152-61.)  Newton engaged Jesus

Montoya in conversation, and then called Williams over to accompany him into Montoya's truck. (32 RR at 160-63.)  Newton drove the truck to an ATM, told Williams to go with Montoya to get Montoya's money, and threatened to shoot Montoya if he ran. (32 RR at 164-66.)  When Newton made that threat, his gun lay in his lap. (32 RR at 166.)  After Montoya was forced to withdraw two hundred dollars, Newton drove Montoya and Williams to a field near an abandoned house and ordered Montoya out of the truck. (32 RR at 167-80.)  There, Newton took Montoya's necklace and, after hearing Montoya say that he remembered faces, fatally shot Montoya. (31 RR at 35; 32 RR at 180-82.)  The next day, Newton pawned Montoya's necklace. (31 RR at 106-07; 35 RR at 209-20.)

## III.  ISSUES PRESENTED.

Petitioner claims (Ground 1) that he was denied his Sixth Amendment rights when the trial court excused for cause a member of the venire, (Ground 2) that he was denied his right to remain silent by a prosecutor's question asking whether Newton was in a position to corroborate a disputed matter, (Ground 3) that his due process right was violated by the trial court's failure to define the term "criminal act of violence", (Ground 4) that his right to the effective assistance of counsel was violated by the failure of his trial counsel to investigate and present mitigation evidence, (Ground 5) that his right to due process and a trial by jury were violated by the lack of a jury instruction concerning the burden of proof on the mitigation special issue, and (Ground 6) that his right to due process was violated by the administration of medication during his incarceration without the knowledge of his attorneys.  Petitioner also makes an alternative request for an evidentiary hearing.

## IV. PROCEDURAL BAR.

Respondent asserts a procedural bar to several of petitioner's claims.  Federal courts will not consider the merits of a claim resolved by the state courts on an independent and adequate state law

ground. *See Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002); *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991).  Therefore, the Court will address these issues first.

To be adequate to bar federal review, a state law ground must be "firmly established and regularly followed" at the time that it was violated, *See Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991), and the state court's application of the procedural rule must not otherwise be exorbitant. *See Lee v. Kemna*, 534 U.S. at 376, 122 S.Ct. at 885.  Petitioner bears the burden of showing that a state procedural rule is not adequate to bar federal review, *See Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997), that sufficient cause and prejudice exist to excuse the procedural default, or that imposition of the bar would result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. at 2565.

In Petitioner's fourth claim, he contends that he was denied his Sixth Amendment right to the effective assistance of counsel by when his trial counsel failed to conduct a thorough investigation of his life and psychological history, and failing to present mitigation evidence to the jury at his trial. (Pet. Brief at 30-51.)  Respondent contends that this claim is unexhausted because Petitioner failed to present it to the state courts, and therefore it is now procedurally barred. (Answer at 40-42.) Petitioner acknowledged that this claim was not presented to the state courts, and that this Court may find that he has procedurally defaulted this claim for failure to exhaust. (Pet. Brief at 31 n. 6).  However, he argues that his court-appointed state habeas counsel provided ineffective assistance of counsel and, therefore, he is excused from any procedural default. *Id.*  He further

recognized that this Circuit does not recognize the right to effective assistance of state habeas counsel to excuse such default. *Id.*

There is no constitutional right to counsel in state postconviction habeas corpus proceedings. *See Coleman v. Thompson*, 501 U.S. at 752, 111 S.Ct. at 2566. Accordingly, Petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See id.*; *Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001). This Court is bound by such precedent. Therefore, Petitioner has not shown that any of his failures to exhaust state remedies should be excused. Petitioner's fourth ground for relief is unexhausted.

Texas law precludes successive habeas claims except in narrow circumstances. *See* Tex. Crim. Proc. Code Ann. art. 11.071 § 5 (Vernon Supp.2006). Under § 5, unless Petitioner presents a factual or legal basis for a claim that was previously unavailable or shows by a preponderance of the evidence that, but for a violation of the United States Constitution, no rational juror would have found for the State, Petitioner is procedurally barred from returning to the Texas courts to exhaust his claims. *Id.* From the allegations before this Court, Petitioner could not satisfy this exception and would be barred from making this claim in a successive state habeas corpus petition. Therefore he is also procedurally barred from proceeding with this claim in federal court. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001)(citing *Coleman v. Thompson*, 501 U.S. at 735 n.1, 111 S.Ct. at 2557 n.1). Petitioner asserts no other reason to excuse him from any procedural default barring this claim from federal habeas corpus review. *See Beazley*, 242 F.3d at 264*; Stokes*, 123 F.3d at 860*; Edwards*, 120 S.Ct. at 1591. Accordingly, Petitioner's fourth claim for relief is now procedurally barred.

4

In his fifth claim for relief, Petitioner claims that the trial court relieved the prosecution of its constitutional burden to prove lack of mitigating circumstances beyond a reasonable doubt. (Pet. Brief at 51-52.) Petitioner acknowledged that the Fifth Circuit Court of appeals has already rejected the argument forming the basis of this claim. (Pet. Brief at 52-53, citing *Hughes v. Johnson*, 191 F.3d 607, 625-26 (5th Cir. 1999)).  He also appears to have acknowledged that this sort of claim is not cognizable on collateral review. (Pet. Brief at 53 n. 11, citing *United States v. Brown*, 305 F.3d 304, 310-11 (5th Cir. 2002).  Therefore, had this claim been exhausted, then it would be denied on other grounds.

Respondent counters that Petitioner did not exhaust his state remedies, and in the alternative that this claim is foreclosed by Circuit precedent. (Ans. at 54-56.)  This Court agrees. Petitioner did not make this claim before the state courts.  It is, therefore, unexhausted and would now be barred in a successive state petition.  Petitioner has not shown any cause and prejudice, or manifest injustice, to excuse this procedural default barring this claim from federal habeas corpus review. *See Beazley*, 242 F.3d at 264*; Stokes*, 123 F.3d at 860*; Edwards*, 120 S.Ct. at 1591.  Therefore, Petitioner's fifth claim for relief is unexhausted and procedurally barred.

In his sixth claim for relief, Petitioner claims that he was denied due process of law when he rejected the prosecution's plea bargain offer to receive life imprisonment because he had been rendered incompetent due to an injection of Haldol by the jail's medical personnel. (Pet. Brief at 53-54.)  This claim was not presented to the state courts and is therefore unexhausted.  This unexhaustion will also be considered a procedural bar if Petitioner would now be precluded from returning to state court.

Again, Texas law requires that to be considered by the state courts in a subsequent state petition for writ of habeas corpus, a claim must have been unavailable at the time that the prior petition was filed. Art. 11.071 § 5 of the Texas Code of Criminal Procedure provides, in part, that

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
>> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> * * *
>
> (e) For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

Tex. Crim. Proc. Code Ann. art. 11.071 § 5(a)(1) (Vernon Supp. 2006). To satisfy this requirement, it is not enough to show that Petitioner was ignorant of such claim, or that it was not an issue in a prior hearing. *See Ex parte McGinn*, 54 S.W.3d 324, 332 (Tex.Crim.App. 2000). Construing this requirement, the Texas Court of Criminal Appeals has stated

> What the statute requires is not that the availability of facts be "questionable." It requires that the application contain specific facts establishing that the current claim could not have been presented previously in a timely initial application because the factual basis for the claim was unavailable.

*Id.* at 333. Petitioner has not satisfied this requirement.

Petitioner mentioned in a footnote that "[u]ndersigned counsel discovered this information immediately prior to the filing of this writ, therefore, Mr. Newton reserves the right to provide further briefing on this issue." (Pet. Brief at 53 n. 12.) Petitioner's brief cites "Jail Records" as the

6

source of this information (Pet. Brief at 54), and the attachments to his brief included Dallas County Jail psychiatric notes dating from December 6, 1999, more than two months prior to the date in question. (Attachments ## 2 & 3 to Pet. Brief.)  While Petitioner alleges that this psychiatric treatment was "kept from his lawyers" (Pet. Brief. at 54), the referenced declaration by trial counsel indicate merely that trial counsel was "completely unaware" and "never told or informed" of these facts.  Petitioner is silent about whether he actually knew of the nature of this injection at the time, and whether these jail records were available to his attorneys.  None of Petitioner's pleadings before this Court reveal how his federal habeas counsel discovered this information.

However, the records before this court indicate that this information was available to his attorneys at the time of his trial.  In fact, defense counsel were in contact with the physicians treating Petitioner in the jail and called upon them during his trial.  Dr. Lisa Clayton, who saw Petitioner as part of her duties as a jail doctor and was later hired by the defense, was called by the defense to testify before the state trial court prior to the punishment phase of the trial. (42 RR at 10.)  She testified before the state court that she had reviewed Petitioner's medical records from the Dallas County Jail, was familiar with the physicians that prescribed these medications, that the jail notes indicated that the defendant had received Risperdal, Haldol and Cogentin, and she explained the significance of these medications including their effects and the reasons that they were administered. (42 RR at 4-8.)  Dr. Michael Pittman, one of his jail psychiatrists, testified for the defense regarding Petitioner's mental evaluation and diagnosis at the jail, that Petitioner was given Benadryl, Risperdal, Haldol and Xapraza, the effects of these medications and reasons that they were prescribed. (42 RR at 86-106.)  Dr. Pittman also identified Petitioner's medical records, which were admitted at the trial and testified that he had received injections of Haldol on two occasions. (42 RR at 88, 90-92, 94-95,

7

97-98, 101-02, 127-28). These medical records included most of those attached to Petitioner's Brief, as well as other records, and specifically included records showing that Petitioner had been administered Haldol on the evening of February 16, 2000. (Def. Ex. #90; Pet. Attachments ## 2, 3). Clearly, this information was available to Petitioner and his counsel from the time of his trial.

If Petitioner was rendered incompetent by the February 16, 2000 injection, he has not shown that this information was not available at the time of his state application for writ of habeas corpus. Accordingly, it appears that Petitioner would be precluded by Texas law from returning to state court to exhaust his remedies in a successive petition in state court. *See Beazley*, 242 F.3d at 264. The Court also notes that part of the cross-examination of Dr. Pittman drew a contrast between Petitioner's condition on February 29, 2000, and his prior condition when the prosecutor asked,

> Q.    But other than that, you don't have any explanation for why [Petitioner] could be alert and awake last week and today he's seemingly like a zombie?
>
> A.    No, sir.

(42 RR at 122.) This suggests that Petitioner appeared to be alert and functioning in court during the week immediately following the Haldol injection. Petitioner has not shown sufficient cause and prejudice, or manifest injustice, to excuse this procedural default. *See Beazley*, 242 F.3d at 264*; Stokes*, 123 F.3d at 860*; Edwards*, 120 S.Ct. at 1591. Therefore, Petitioner's sixth claim for relief is unexhausted and procedurally barred.

## V.  STANDARD OF REVIEW

The standard of review in federal habeas proceedings is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, which provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in

8

custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d)(1996). This statute applies to all federal habeas corpus petitions which, as with the instant case, were filed after April 24, 1996, provided that they were adjudicated on the merits in state court. *See Lindh v. Murphy*, 521 U.S. 320, 327, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997). Resolution on the merits in the habeas corpus context is a term of art that refers to the state court's disposition of the case on substantive rather than procedural grounds. *See Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).

Section 2254(d)(1) concerns pure questions of law as well as mixed questions of law and fact. *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). With respect to the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*, 529 U.S. at 413, 120 S.Ct. at 1523. Under *Williams*, a state court unreasonably applies Supreme Court precedent

9

if it "unreasonably extends a legal precedent from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407, 120 S.Ct. at 1520.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts must give deference to state court findings unless they were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified on denial of rehearing). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## VI.  EXCLUSION OF VENIREPERSON FOR CAUSE.

In his first claim, petitioner contends that his right to due process of law was denied when the trial court excused venireperson Mary Chaffin for cause. For the reasons set forth below, this claim is denied.

### A. Applicable Law.

The Sixth Amendment protects the right to a fair trial before an impartial jury. In *Witherspoon v. Illinois*, 391 U.S. 510, 512-23, 88 S.Ct. 1770, 1772-78, 20 L.Ed.2d 776 (1968), the Supreme Court held that the prosecution's use of an Illinois statute that excluded for cause any prospective juror with "conscientious scruples" against capital punishment to eliminate nearly half of the venire did not result in a jury that reflected the "conscience of the community," but rather "stacked the deck" in favor of the prosecution in violation of the Sixth Amendment. Later, the Supreme Court clarified that "the proper standard for determining when a prospective juror may be excluded for cause because of

10

his or her views on capital punishment" is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)(quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)).

In applying this standard, *Witt* also explained that the presumption of correctness conditionally required under § 2254(d) applies to the trial court's determination of a challenge for bias. 469 U.S. at 430, 105 S.Ct. at 855. "[S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." 469 U.S. at 428, 105 S.Ct. at 854 (footnote omitted). The trial court need not detail its reasoning or explicitly conclude that a prospective juror is biased, so long as it is evident from the record. 469 U.S. at 430, 105 S.Ct. at 855.  Now, the AEDPA requires even greater deference to the state trial court's determination. *See* 28 U.S.C. § 2254(d) and (e).

After repeating this standard, the Court of Appeals in *Drew v. Collins*, recited facts similar to the instant case.

> A review of Grover Smith's voir dire examination reveals that he stated on several occasions that he would hold the State to a higher burden of proof than the "reasonable doubt" standard in a capital case. Drew portrays Smith's statements as indicating not that he would hold the state to a higher burden of proof, but that Smith would permit the capital nature of the case to influence his perception of what constitutes proof beyond a reasonable doubt.  Drew contends that *Adams* prohibits dismissal of a prospective juror on this ground. In *Adams*, the Court held that the Constitution did not permit exclusion of jurors from the penalty phase of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond a reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt. Such assessments and judgments by jurors are inherent in the jury system, and to exclude all jurors who would be in the slightest way affected by the prospect of the death penalty or by their views about such a penalty would be to deprive the defendant of the impartial jury to which he or she is entitled under the law. 448 U.S. at 50, 100

11

S.Ct. at 2529. Here, however, prospective juror Smith did not merely state that he might apply the reasonable doubt standard differently in a capital case. He stated on numerous occasions during voir dire questioning that he would apply a standard higher than what he understood as the reasonable doubt standard. The trial court could correctly determine that Smith's insistence on such a high burden of proof would substantially impair his performance as a juror.

964 F.2d 411, 416-17 (5th Cir. 1992).

## B. Discussion.

In the instant case, the attorneys for both parties and the trial court extensively examined prospective juror Mary Chaffin, who repeatedly stated that she would hold the prosecution to a higher burden of proof than "beyond a reasonable doubt" because it was a death penalty case. (7 RR at 73-74, 76-81, 86-90, 94-95, 97.) The prospective juror also testified that she could not answer the jury questions in such a way as to assess the death penalty on circumstantial evidence (7 RR at 81-82) or upon someone who did not actually "pull the trigger." (7 RR at 84, 86.) The trial court observed that she appeared to have re-qualified herself on the issue of whether she could assess the death penalty on a party to the offense, but would have impermissibly "raised the bar" on the burden of proof because it was a death penalty case. (7 RR at 98). This finding appears correct from the record and has not been shown otherwise. Accordingly, the state court's denial of this claim was neither unreasonable nor contrary to Supreme Court precedent. Therefore, Petitioner's first claim for relief is denied.

## VII. PROSECUTOR'S QUESTION.

In his second claim, Petitioner complains that a prosecutor's question violated his Fifth Amendment right to remain silent. (Pet. Brief at 24-29.) This Court disagrees.

## A. Applicable Law.

12

The Fifth Amendment guarantees a criminal defendant the right to remain silent. Prosecutorial comments on a defendant's exercise of this privilege can constitute an unconstitutional infringement on this right. *See Griffin v. California*, 380 U.S. 609, 614-15, 85 S.Ct. 1229, 1232-33, 14 L.Ed.2d 106 (1965); *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). A prosecutor's remarks can violate this guarantee if (1) the prosecutor's manifest intent is to comment on the defendant's silence or (2) if the character of the remark is such that the jury would naturally and necessarily construe it as a comment on the defendant's silence. *See United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996). Construing this requirement, the Court of Appeals observed,

> The prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark. *Id.* As for the second possibility, " 'the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury *necessarily* would have done so.' " *Id.* (quoting *United States v. Carrodeguas,* 747 F.2d 1390, 1395 (11th Cir.1984), *cert. denied sub nom., Hernandez-Cartaya v. United States,* 474 U.S. 816, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985)). Both inquiries are properly conducted by reviewing the challenged remarks in context. *United States v. Jones,* 648 F.2d 215, 218 (5th Cir.1981).

*Grosz*, 76 F.3d at 1326. In a federal habeas corpus proceeding, "the standard for determining whether habeas relief must be granted is whether the *Doyle* error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

## B. Discussion.

During the trial on guilt, the defense called Detective Michael Meek of the Mesquite Police Department who was the assigned lead investigator for this case. (39 RR at 57, 103.) The defense attorney questioned Det. Meek regarding the accuracy and thoroughness of the police investigation, pointing out potential deficiencies in the investigation and weaknesses in the prosecution's case,

13

particularly as it related to information that the police received from co-defendant Julian Williams. The Court notes that the defense attorney's questions also explored the statements of Anthony Williams, who was not a co-defendant, and compared them with those of Julian Williams.  Besides the fact that Anthony Williams suggested other accomplices to the crime, it is unnecessary to discuss Anthony Williams's statements in further detail here.   Therefore, further reference herein to "Williams" will refer to Julian Williams.

In an apparent attempt to discredit the police investigation and Williams's testimony, the defense attorney extensively questioned Det. Meek to determine which individual facts learned from Williams had been corroborated by other people. (39 RR at 66-70, 74-75, 77-79, 81-87, 90-96, 109). The defense attorney also attempted to cast doubt on the reliability of Williams's testimony by pointing out inconsistencies in Williams's statements (39 RR at 69-74, 86-90, 96-101), characterizing them as minimizing his role in the crime (39 RR at 71-74, 78-85, 91, 93-94), and also by suggesting that other possible accomplices to this crime existed that had not been discovered by the police. (39 RR at 111, 119-121).

On cross-examination, the prosecutor began by exploring the nature of Julian Williams's relationship with the police, and his *Miranda* rights to not discuss the facts at all. (39 RR at 130-34.) The prosecutor then discussed the legal consequences of Williams's admissions and tried to reduce the significance of the lack of corroboration to certain facts. (39 RR at 135-37.)  During this part of the cross-examination, the following exchange occurred,

> Q.   Now, as Mr. Anton was questioning you about the statements given by Julian Williams, sir, simply because something is uncorroborated, does that make it untrue?
>
> A.   No, sir.

14

Q.    Is it uncommon to have statements given to you where there are facts that are simply incapable of being corroborated by your department?

A.    Yes, sir.

Q.    And again, does it make those statements necessarily untrue because you cannot independently verify them?

A.    No, sir.

Q.    In fact, several of these statements – for instance, what occurred in this pickup truck when Roderick Newton, Julian Williams, and Jesus Montoya were there by themselves?  Was it your understanding that only those three people were inside the pickup at times?

A.    Yes, sir.

Q.    So, as to what was done or what was said, certainly Julian Williams told you what had happened – correct?

A.    Correct.

Q.    Jesus Montoya is dead so he can't corroborate it, can he?

A.    No, sir.

Q.    And I believe that Mr. Anton talked about other sources.  Would it be fair to say the only other source that could corroborate what happened would be the Defendant himself, Roderick Newton?

A.    Correct.

      MR. ANTON: Your honor, I think that's a comment on his failure to testify.

      THE COURT: Overruled at this time.

Q.    (By Mr. Davis) And certainly there were occasions, where there not, described in this statement where only Roderick Newton and Julian Williams were present in the vehicle?

A.    Yes, sir.

Q.    When certain things were said.

15

A.     Yes, sir.

(39 RR at 136-38.)

In reviewing this complaint on direct appeal, the Texas Court of Criminal Appeals noted the state law requirement that accomplice testimony be corroborated by other evidence in order to sustain a conviction. *See Newton v. State*, No. 73,778, slip op. at 7 n. 7 (Tex. Crim. App. 2002)(unpublished)(*citing* Tex. Crim. Proc. Code, art. 39.14). Viewed in the context of that state-law requirement, the defense attorney's direct examination attempted to discredit the police investigation and the co-defendant's testimony by asking whether each fact contained in any of Williams's statements had been corroborated, and by pointing out other statements referring to various "fall guys" to suggest that persons other than Newton, Williams, and the victim were involved in this case "but that the police had failed to apprehend any of these people and, therefore, corroborate any of these statements." *Id.* at 8. The state court then found that the exchange in question was an attempt by the prosecutor "to refute the appellant's implication that evidence must corroborate in every detail of Williams's testimony and to undercut the defense's theory that other unidentified persons participated in the crime." *Id.* at 9. Thus, the prosecutor was merely responding to an invitation by the defense and "did not stray outside the scope of the appellant's invitation." *Id.* These findings appear to be correct and reasonable applications of Supreme Court precedent.

In *United States v. Robinson*, 485 U.S. 25, 32, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1988), the Court stated that the prohibition of *Griffin* did not extend so far as to prohibit the prosecutor from responding to arguments of defense counsel.

> Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to

16

> the defendant's opportunity to testify is a fair response to a claim made by defendant
> or his counsel, we think there is no violation of the privilege.

The state court carefully reviewed the context in which this exchange occurred, and reasonably

concluded that the prosecutor was fairly responding to the defense invitation before the jury. *Griffin*

does not prohibit such a response.

> It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a
> defendant's exercise of his right to remain silent at trial as substantive evidence of
> guilt; it is quite another to urge, as defendant does here, that the same reasoning would
> prohibit the prosecutor from fairly responding to an argument of the defendant by
> adverting to that silence. There may be some "cost" to the defendant in having
> remained silent in each situation, but we decline to expand *Griffin* to preclude a fair
> response by the prosecutor in situations such as the present one.

*Robinson*, 485 U.S. at 34, 108 S.Ct. at 870. The state court's findings have not been shown to be

incorrect, and its disposition of this claim has not been shown to be unreasonable or contrary to

Supreme Court precedent. Accordingly, Petitioner's second claim for relief is denied.

## VIII. FAILURE TO DEFINE TERM IN JURY CHARGE.

In his third claim for relief, Petitioner claims that the trial court's refusal to define the term

"criminal acts of violence" in a special issue violated his right to due process of law. However,

Petitioner has conceded that "his argument is foreclosed by Fifth Circuit precedent" and that "he

raises this issue for the purpose of preserving it for Supreme Court review." (Pet. Brief at 30, citing

*James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993)). Respondent asserts that this claim is

foreclosed by the principles of *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d

334 (1989), which bars the retroactive application of new rules on post-conviction habeas corpus with

narrow exceptions. (Ans. at 37-39.) However, since Petitioner has identified no new rule that would

authorize relief, it is unnecessary to determine its retroactive application.

17

A. Applicable Law.

In *James v. Collins*, the Fifth Circuit Court of Appeals considered whether a number of terms used in the Texas special issues, such as this one, were impermissibly vague aggravating factors. In holding that they were not, the Court of Appeals stated that "the terms used in the special issues are not so vague as to require clarifying instructions." *James*, 987 F.2d at 1120.

B. Discussion.

Petitioner has correctly identified precedent that binds this Court against granting relief on this claim. Accordingly, Petitioner's third claim for relief is denied.

IX. EVIDENTIARY HEARING.

Petitioner requested in the alternative that an evidentiary hearing be held to resolve any disputed fact issues. (Pet. Brief at 56.) When the pleadings demonstrate a factual dispute, that, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded him a full and fair evidentiary hearing, a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing. *See Hughes v. Johnson*, 191 F.3d 607, 630 (5th Cir. 1999). Since the pleadings demonstrate that there is no factual dispute upon which federal habeas corpus relief can be granted, no evidentiary hearing is warranted.

X. CONCLUSION

Petitioner's petition for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

DATED: March 28, 2007.

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE

18